UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LARRY G. BINGGELI, JR., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | Case No.: C08-1316 CRD <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Larry Binggeli appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), 42 U.S.C sections 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-five-year-old man, forty years old at the alleged disability onset date. He has a limited education and work experience as a fisherman, a construction worker, and a truck driver. Plaintiff applied for SSA benefits in May 2005 alleging disability since November 2003 due to pain in his neck, back, legs, arms, and shoulders. His claim was denied initially and upon reconsideration, and he timely requested an ALJ hearing.

ORDER - 1

A *de novo* hearing before ALJ Adams was held in September 2007. The ALJ heard testimony from Plaintiff, who was represented by counsel, Gerry Zmolek, Esq. Administrative Record ("AR") at 385-409. The ALJ rendered an unfavorable decision on October 22, 2007, finding Plaintiff not disabled. Plaintiff requested review by the Appeals Council and review was denied, rendering the ALJ's second decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On September 17, 2008, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. THE DISABILITY EVALUATION

As the claimant, Mr. Binggeli bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability. AR 13, Finding 2. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found Plaintiff has the severe impairments of a back disorder, chronic neck pain, cognitive disorder not otherwise specified, and a depressive disorder *Id.*, Finding 3. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*. In this case the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment. AR 14, Finding 4.

---

[1]Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ in this case found Plaintiff can perform modified light work. AR 14-15, Finding 5.

The ALJ next found that Plaintiff is unable to perform any of his past relevant work as a fisherman, construction worker, or as a truck driver, because the exertional level of those jobs is too heavy for Plaintiff's RFC. AR 21, Finding 6. If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded. In this case, the ALJ found that Plaintiff could perform sedentary work such as work as an optical goods assembler or a glass frame polisher. AR 22. The ALJ therefore concluded Plaintiff was not disabled as defined in the SSA. *Id.*

## V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:[2]

1. Did the ALJ err in assessing Plaintiff's residual functional capacity at step five?
2. Did the ALJ err in assessing the severity of Plaintiff's impairments at step two?
3. Did the ALJ err in assessing medical opinions?
4. Did the ALJ err in assessing Plaintiff's credibility?

---

[2] The Court notes that Plaintiff's opening brief is 26 pages long. Local Civil Rule 7 provides that the brief may not exceed 24 pages and the scheduling order controlling this case directs that Plaintiff's opening brief contain a "clear and concise statement" of the issues. Dkt. 10 at 1-2. Plaintiff's counsel is reminded to heed page limits and present concise arguments to the Court. Plaintiff's attorney, Mr. Namba, was recently cautioned by this Court against page limit violations in another case, C08-579-CRD. Dkt. 17 at 5. **Future disregard of page limits without Court permission will subject counsel to sanctions**.

ORDER - 4

5. Did the ALJ err in assessing lay witness statements?

Dkt. No. 13.

## VI. DISCUSSION

*A.  The ALJ did not err at step five.*

Plaintiff asserts that the ALJ erred in failing to support the step five findings with substantial evidence. Specifically, Plaintiff argues the ALJ erred because he found that Plaintiff required the option to alternate sitting, standing, and walking throughout the workday; however, found him able to perform the jobs of optical goods assembler and glass frame polisher, which are sedentary jobs that Plaintiff argues do not allow for alternating positions. Plaintiff also argues the ALJ did not specify how frequently he needs to alternate sitting and standing, and did not elicit testimony from the vocational expert whether the two identified jobs could provide accommodation for his need to alternate positions. Plaintiff argues, therefore, that the vocational expert's (" VE") testimony is not competent evidence on which the ALJ may rely. Defendant argues that the vocational expert's testimony that the two identified jobs would allow alternating positions is not in conflict with the Dictionary of Occupational Titles. Defendant also asserts that the hypothetical assumed the person would alternate positions as frequently as necessary.

The ALJ found that Plaintiff retains the physical functional capacity to "lift and carry 20 pounds occasionally and 10 pounds frequently while having the opportunity to alternate sitting, standing, and walking during an eight-hour workday." AR 14-15. At the hearing, the ALJ presented the vocational expert with a hypothetical question involving a person who required the "opportunity to alternate sitting, standing, and walking during the eight-hour workday." AR 404. The VE responded that the optical goods assembler job would allow such an opportunity. AR 405. The ALJ then asked the VE if a parking garage attendant job would also fit the requirements; the VE responded that it would not due to the high walking requirement. AR 406. The ALJ next asked the VE if there were any other assembly type jobs "that would also permit the same kind of freedom to sit and stand" as the optical goods assembler job, to which the VE responded that the glass frame polisher job would also allow the option to change positions. AR 407. Plaintiff argues the ALJ's hypothetical did not specify the amount of position shifting

required and disagrees that the ALJ meant the opportunity to change positions at will. The Court notes that the ALJ expressed the option to change positions as "*freedom* to sit and stand" which implies the person would have the opportunity to alternate positions as necessary. The vocational expert's response was based on the ALJ's framing of the hypothetical question regarding a person who needs to change positions "during the eight-hour workday" an unspecified number of times. The Court finds the ALJ's hypothetical and the VE's response was not in error because the ALJ did not specify the number or frequency of posture changes that would be required. Neither the ALJ nor the VE expressed confusion regarding the posture change requirement. The VE testified the two positions would provide the required "freedom to sit and stand," as framed by the ALJ. The Court finds neither the hypothetical presented to the vocational expert nor the expert's replies are in error; therefore the ALJ's findings at step five are based on substantial evidence from the vocational expert's testimony.

     *B.     The ALJ did not err in assessing the severity of Plaintiff's impairments.*

Plaintiff asserts that the ALJ failed to properly evaluate the severity of his hand and shoulder problems at step two of the disability evaluation because the ALJ failed to properly consider medical and testimonial evidence and failed to apply proper legal standards in making the findings. Dkt. 13 at 12.

    <u>Plaintiff's Hands</u>

At step two, the ALJ found Plaintiff's severe impairments include "back disorder, chronic neck pain, cognitive disorder NOS, and depressive disorder NOS." AR 13. The next ALJ discussed Plaintiff's hand complaints but found that "the medical evidence fails to show that the claimant's hand problems are more than transient or cause significant functional limitations. *Id.* The ALJ based this conclusion on the following medical evidence:

> [W]hen seen in September 2005, the claimant had negative Tinel's signs at the wrists. He also showed good grasp and had normal light touch. James Prickett, M.D., reported that he found no symptoms to support carpal tunnel syndrome, ulnar entrapment, or cervical radiculopathy (Exhibit 1F/158). Additionally, medical records after September 2005 document no other significant complaints of hand pain or numbness (Exhibit 1F/182-207).

AR 14. Plaintiff argues the ALJ incorrectly presented Dr. Prickett's findings. Defendant states that the ALJ may have harmlessly misquoted Dr. Prickett's findings because Dr. Pricket noted that Plaintiff "may have carpal tunnel syndrome" whereas the ALJ stated that "he found no symptoms to support carpal tunnel syndrome."

Dr. Prickett's findings state that Plaintiff "has negative Tinel's [diagnostic test for carpal tunnel syndrome] at the wrist with good grasp and light touch in the hands" and "numbness and tingling in the palmar aspect of his hands intermittently. No symptoms currently with negative Tinel's. He may have carpal tunnel syndrome. I doubt ulnar entrapment. I doubt cervical radiculopathy although it remains in his differential. He has no symptoms currently, however, and good grasp light touch in the hands." AR 199. Dr. Prickett concluded that "[Plaintiff] might benefit from nerve conduction studies of the upper extremities if his numbness and tingling in the hands becomes more problematic but as he is really asymptomatic currently, he would like to hold off on that for now." AR 200. Thus, Dr. Prickett did not definitively rule out carpal tunnel syndrome, but noted that testing was negative and that Plaintiff did not have any current symptoms. Based thereon, the Court finds that, contrary to Plaintiff's contentions, the ALJ did not misrepresent Dr. Prickett's evidence or opinions. The Court finds the ALJ's assessment of Dr. Prickett's findings is based on substantial evidence in the record and is therefore not in error.

Plaintiff also asserts that the ALJ erred in failing to consider a 2003 diagnosis of carpal tunnel syndrome. Defendant argues that the 2003 diagnosis is prior to the relevant period for which Plaintiff alleges disability, and was at a time when Plaintiff was still working as a fisherman. Defendant's statement is correct; however, the Court notes that the diagnosis was in September 2003, just shortly before the alleged disability onset date of November 2003. Regardless, the ALJ correctly found that "medical records after September 2005 document no other significant complaints of hand pain or numbness." AR 14. Other than the positive diagnosis just prior to the onset date, Plaintiff points to no clear evidence of severe hand impairment. Based thereon, the Court finds the ALJ did not err in concluding that Plaintiff's hand problems are not severe impairments at step two.

Plaintiff's Shoulder

Plaintiff asserts that the ALJ erred in not finding his shoulder problem to be a severe impairment. The ALJ discussed Plaintiff's shoulder problem, noting that he had successful left shoulder surgery but was reluctant to seek the same for his right shoulder, which the ALJ concluded meant the right shoulder problem was not severe. AR 14. The ALJ also noted that Dr. Holroyd did not make a specific diagnosis regarding the right shoulder during a 2007 examination, and that records prior to that time "document few complaints of right shoulder problems." *Id.* Plaintiff points to instances in the record where he complained of shoulder pain, including in 1999, 2003, 2004, 2006, and 2007, and argues further that there is no medical basis for the ALJ's finding that "with treatment, the right shoulder symptoms would likely improve within 12 months." AR 14. The Court notes the logic in the ALJ's reasoning given that surgery apparently improved Plaintiff's left shoulder. Plaintiff's hesitancy to seek treatment is a factor the ALJ may consider in determining the severity of an alleged impairment. Further, Plaintiff points to no medical opinion finding he is unable to work due to a right shoulder impairment. Plaintiff's subjective complaints are documented in the administrative record however, as the ALJ noted, they are few and do not ring severe. Based thereon, the Court finds the ALJ did not err in concluding that Plaintiff's shoulder problems are not severe impairments at step two.

*C.     The ALJ did not err in assessing Dr. Lui's opinions.*

Plaintiff argues that the ALJ erred in failing to provide sufficient reasons for discounting the opinions of Dr. Lui. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1995); *Magallanes*, 881 F.2d at 751-55. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof and making findings. *Magallanes*, 881 F.2d at 751 (internal citations omitted). The rejection of an opinion of a treating physician based in part on the testimony of a nontreating, nonexamining medical advisor

may be upheld. *Morgan v. Commissioner*, 169 F.3d 595, 602 (9th Cir. 1999), citing *Magallanes*, 881 F.2d at 751-55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

Treating physician Dr. Lui saw Plaintiff from January 2005 through April 2007. Plaintiff disputes the ALJ's handling of three of Dr. Lui's medical opinions, offered in June 2005, November 2005, and August 2005. The ALJ found Dr. Lui's opinions are contradicted by those of the state agency physician. AR 19. Regarding the June 2005 opinion, the ALJ noted that Dr. Lui diagnosed "marked" neck pain and opinined that Plaintiff is limited to sedentary work. AR 19 citing AR 219. The ALJ discounted the opinion noting that "the diagnostic studies of the claimant's neck are fairly mild" and "neck symptoms appeared to have resolved by November 2006". AR 19. Defendant argues that the ALJ's finding that the neck problems were "fairly mild" is based on Dr. Holroyd's opinion that MRIs showed mild neck problems that would not create significant disability or pain. The ALJ cites Dr. Holroyd's analysis of the MRIs (AR 16-17 citing AR 150), and also discusses the mild results of a May 2005 neck x-ray, the mild results of a June 2005 MRI, and also notes that records prior to May 2005 do not document complaints or treatment for neck pain.

The ALJ concludes that the neck symptoms appeared to be resolved by November 2006 because the medical records after that time do not indicate an ongoing problem. AR 17 *citing* AR 140-66, 282-89. The ALJ also noted that in July 2007, Plaintiff did not list neck pain as a complaint. AR 17. The Court finds the reasons cited by the ALJ are factually correct and based on evidence in Plaintiff's medical records. Thus, the Court finds the ALJ's reasons for discounting Dr. Lui's June 2005 opinion are specific and legitimate, based on substantial evidence, and are therefore not in error.

Regarding Dr. Lui's November 2005 opinion in which the doctor opined Plaintiff could lift and carry twenty pounds, walk, stand, and sit for two hours in a six-hour workday with postural limitations, the ALJ noted that he "credits Dr. Lui's lifting restrictions, but finds that his walking, standing or sitting restrictions are not supported by the examination records or the claimant's daily activities." AR 19. The ALJ also notes that the diagnosis of lumbar radiculopathy is contradicted by an April 2007 EMG diagnostic test. *Id.* Noting that he gave

ORDER - 9

"some weight" to the lifting restrictions and considering other objective medical evidence and Plaintiff's activities, the ALJ concluded that Plaintiff has the RFC to "lift and carry 20 pounds occasionally and 10 pounds frequently while having the opportunity to alternate sitting, standing, and walking during an eight-hour workday". AR 20. The ALJ also discusses Plaintiff's reported activities that suggest a greater RFC than is claimed, including doing small chores, caring for his personal needs, caring for his daughter, visiting friends, attending church, helping care for his grandparents, and walking his dog. AR 16. The Court finds the ALJ appropriately credited, to the extent he found reasonable, Dr. Lui's restrictions. To the extent Dr. Lui's restrictions were not fully credited, the ALJ gave specific and legitimate reasons supported by substantial evidence in the record, *e.g.*, the results of the April 2007 EMG test.

Plaintiff also asserts the ALJ erred in failing to discuss Dr. Lui's August 2005 opinion that he is disabled. Dkt. 13 at 17. The Court disagrees with Plaintiff's assertion that Dr. Lui opined that he is conclusively disabled. Dr. Lui's report states: "chronic neck pain. The patient has been disabled because of his neck problem" in a summary section of what is apparently Plaintiff's subjective report of his problems. Subsequent sections in the report contain objective summaries of Dr. Lui's physical examination results and Dr. Lui's own assessment of Plaintiff's problems including a note that "he may need an independent medical examination to determine the degree of his disability." AR 204. The Court finds the ALJ did not err in not discussing the notation in Dr. Lui's report as an opinion or diagnosis of conclusive disability.

### D. *The ALJ did not err in assessing Plaintiff's credibility.*

Plaintiff argues that the ALJ failed to make an accurate credibility finding regarding his testimony of pain and limitations. Absent evidence of malingering, the ALJ can only reject Plaintiff's testimony regarding the severity of his symptoms by giving "specific, clear and convincing reasons" for the rejection. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036; *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Thomas*, 278 F.3d at 958-59. In finding a claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). However, an ALJ may not discredit a claimant's pain testimony solely on the ground that it is not supported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989).

Here, the ALJ concluded that Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, but that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (AR 15) primarily because he participates in activities that suggest greater functional capacity (AR 16). The ALJ cited no evidence of malingering by Plaintiff and gave the following reasons for not finding the degree of Plaintiff's complaints fully credible:

> In February 2005, the claimant reported that he drove and worked as a fisherman. He stated that he had not worked in the past one and a half weeks because things were "slow" (Exhibit 1F/130).

> In July 2005, the claimant's niece stated that the claimant helped his grandparents with small chores, cared for his personal needs, prepared frozen dinners and microwaveable meals, swept, did dishes, rode in a car, shopped in stores for food, watched television, and visited family and friends (Exhibit 1F/39-43).

> In July 2005, the claimant's sister reported that the claimant cared for his daughter, had no problems caring for his personal needs, prepared frozen meals daily, washed dishes, shopped for food in stores, could manage money, watched television every day, talked or visited with others every day, did not have any problems getting along with family, friends, or neighbors, and did not need reminders to perform activities or to take medications (Exhibit 1F/48-52).

> In September 2005, the claimant stated that he groomed himself, shopped for food, performed housecleaning, fixed meals for himself, watched up to 13 hours of television per day, read the newspaper, went to church every other week, saw his eight year-old daughter daily, kept in touch with his father and mother daily, and visited a number of "fishing buddies" at the Bellingham Harbor (Exhibit1F/66).

ORDER - 11

> In November 2005, the claimant stated that he got [his] daughter ready for school, cared for his personal needs, did some laundry, washed dishes, occasionally mowed the lawn, prepared microwaveable meals, went outside every day, rode in a car, could go out alone, shopped in stores once per week, watched sports on television, read to his daughter, went down to the harbor to visit other fishermen two times per week, and attended church on Sundays (Exhibit 1F/62-67).
>
> In April 2006, he stated that he enjoyed walking his dog (Exhibit 1F/163). In January 2007, he reported that he lived with his grandparents and helped care for them. He also stated that his daughter had been living with him since his separation from his wife (Exhibit 1F/192).

The Court finds the ALJ determined based on substantial evidence in the record, that Plaintiff's subjective allegations may be less severe than he alleges. The credibility assessment is supported by clear and convincing reasons that are based on substantial evidence found in the administrative record, and is therefore free of legal error. *See Green v. Heckler*, 803 F.2d 528, 532 (9th Cir. 1986) (stating that ALJ's credibility determinations are entitled to "great deference"); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (stating that ALJ's role is to judge credibility of claimant).

### E. *The ALJ did not err in assessing lay witness statements.*

Plaintiff asserts that the ALJ failed to properly consider and assess the lay evidence consisting of statements from his niece and sister. Dkt. 13 at 12-13. Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (internal citations omitted). The ALJ considered the lay statements but did not accord them full credit, noting that in "July 2005, the claimant's niece stated that she had to help her uncle with chores, cooking, cleaning, shopping, and babysitting when the pain and stress was too much for him to handle." AR 19 citing AR 94-101. The ALJ gave limited weight to the niece's statements "only to the extent that they are consistent with the medical evidence. While the claimant is limited by his neck and back pain, the undersigned finds that the impairments are not disabling." The Court finds this reason is germane; the ALJ may reject the statement to the extent it is inconsistent with medical evidence. As discussed above, the ALJ did not err in finding the medical evidence does not

ORDER - 12

support a disability finding. To the extent the lay witness statements are inconsistent with the medical evidence, it is germane to reject them.

The ALJ also found that "In July 2005, the claimant's sister reported that the claimant could not work or do normal activity. She stated that the claimant had a hard time lifting anything and that his impairment limited his ability to lift, use his hands, kneel, squat, or reach." AR 19 citing 85-92. The ALJ also gave limited weight to the sister's statements "because they are inconsistent with the medical evidence and the claimant's daily activities." AR 19. As discussed above, the ALJ did not err in finding Plaintiff's daily activities are not disabling or limiting to the extent Plaintiff alleges. The Court finds the ALJ's decision not to fully credit the lay witness statements is based on "germane" reasons; as such, the ALJ did not err. *Lewis*, 236 F.3d at 511.

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and the case DISMISSED.

DATED this 27th day of April, 2009.

Carolyn R. Dimmick
United States District Judge